

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

```
ELECTRONICALLY FILED
April 9, 2024 01:36 PM
      PAVAN PARIKH
    Clerk of Courts
  Hamilton County, Ohio
  CONFIRMATION 1455231
```

**WORLDPAY LLC**         A 2401595

   vs.

**PIRCH INC**

**FILING TYPE: INITIAL FILING (IN COUNTY) WITH NO JURY DEMAND**

**PAGES FILED: 40**

EFR200

**EXHIBIT 1**

IN THE COMMON PLEAS COURT OF HAMILTON COUNTY, OHIO
GENERAL DIVISION

| | | |
|---|---|---|
| WORLDPAY, LLC, <br> 8500 Governors Hill Dr. <br> Cincinnati, Ohio 45249 <br><br> Plaintiff, <br><br> v. <br><br> PIRCH, INC., <br> 2714 Loker Avenue W., Suite 200-301, <br> Carlsbad, California 92010 <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CASE NO. _____ <br><br><br><br><br><br> **VERIFIED COMPLAINT FOR DAMAGES AND EMERGENCY INJUNCTIVE RELIEF** |

### STATEMENT OF THE CASE

Worldpay, LLC ("**Worldpay**") is a credit and debit card processor. It contracts with businesses (or "merchants"), like Defendant Pirch, Inc. ("**Pirch**") that wish to accept card payments from their customers. When a customer disputes a transaction with the merchant and initiates a "chargeback," Worldpay's contract requires that the merchant—who received the proceeds from that transaction—provide information related to the underlying transaction, including any information that allowance of the chargeback is not justified, and to cover the cost of any valid chargebacks that are ultimately allowed by the customer's card issuer.

Pirch is a retailer of luxury kitchen appliances and bathroom fixtures that began processing with Worldpay in 2015.[1] Then, on March 20, 2024, Pirch suddenly announced to the public that it

---

[1] Notably, until recently, Pirch was listed as an "investment" of L Catterton, a private equity fund that focuses on "building iconic and enduring consumer brands," including many luxury brands. Per its website, L Catterton has approximately $34B equity capital under management. After Pirch's announcement on March 20, 2024, L Catterton changed Pirch's designation on its website to an "historical investment."

was temporarily pausing operations to "give management the opportunity to complete a go-forward plan." Since that time, its showrooms have been shuttered, and its customers have initiated *millions* of dollars in chargeback requests.

Despite its express contractual obligations to Worldpay, however, Pirch has failed and refused to honor those chargebacks, leaving Worldpay to cover for Pirch's liability. To make matters far worse, Pirch has refused to give Worldpay any information about its current inventory, any prior order fulfillment, or its ability to satisfy pending customers' orders, effectively preventing Worldpay from rebutting chargeback requests and possibly mitigating the losses that will ultimately be caused by Pirch's closure.

With Pirch's chargeback requests quickly approaching eight figures, and with no indication that Pirch ever intends to respond to Worldpay's pressing requests, Worldpay has no choice but to seek judicial intervention. Apart from a reimbursement of the allowed chargebacks that it has not recouped from Pirch, Worldpay respectfully seeks an emergency injunction requiring Pirch to furnish the transaction, order fulfillment, and delivery data that Worldpay urgently needs to determine the validity of, and timely respond to, the mounting chargeback requests. Without such information, which only Pirch can provide, Worldpay has no hope of containing the damage.

### THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Worldpay, LLC successor to Vantiv, LLC, is a Delaware limited liability company. It maintains its principal place of business at 8500 Governors Hill Drive, Cincinnati, Ohio 45249.

2. Defendant Pirch, Inc. is a California corporation. Pirch maintains its principal office and place of business at 2714 Loker Avenue W., Suite 200-301, Carlsbad, California 92010.

3. Pirch is subject to personal jurisdiction in this Court by virtue of its explicit consent

to the jurisdiction of the state and federal courts in Cincinnati, Ohio and Hamilton County, Ohio. (*See* Merchant Agreement, attached hereto as Exhibit A, at Section 23.)

4. Pirch can be served with process through its registered 1505 corporate agent, InCorp Services, Inc., located at 5716 Corsa Avenue, Suite 110, Westlake Village, California 91362.

5. Venue is proper in this Court by virtue of Pirch's explicit consent to the venue of the courts in Cincinnati, Ohio and Hamilton County, Ohio. (*See* Merchant Agreement, attached hereto as Exhibit A, at Section 23.)

## FACTS COMMON TO ALL COUNTS

### WORLDPAY AND THE CHARGEBACK CYCLE

6. Worldpay is, and at all times relevant to this Complaint has been, a credit and debit card processor, also known in the vernacular of the payment systems industry, along with its sponsor bank, as an "acquirer." In that capacity, it serves as a "link" between merchants, such as Pirch (with which Worldpay has a contractual relationship), and the payment networks (*e.g.*, Visa and MasterCard, which tend not to enter into direct contractual relationships with merchants).

7. When a merchant such as Pirch receives a credit or debit card purchase from a customer (also known as a "cardholder"), it communicates the customer's card information to Worldpay. Worldpay then transmits that information to the applicable payment network, which in turn seeks authorization for the transaction from the financial institution that issued the cardholder his or her card, known as the "issuing bank." If the issuing bank authorizes the transaction, the amount of the transaction is debited from its account and (in most instances) is paid to the acquirer, less certain fees retained by or paid to the issuing bank and the applicable payment network, respectively. The balance, less processing fees, is then distributed to the merchant, while the

3

issuing bank then looks to its cardholder for payment after issuance of a billing statement on the associated credit card account. Thus:

**Approval Cycle**



8. On occasion, however, a cardholder may be dissatisfied with his or her purchase from a merchant—*e.g.*, because the goods bought were defective or were not received. In that case, the cardholder can initiate what is known as a dispute of the charge or "chargeback" request.

9. When a cardholder (successfully) secures a chargeback, the relevant purchase is removed from his or her credit card statement. The issuing bank then "reverses" the charge through the applicable payment network, which debits the purchase price from the account of the acquirer (*e.g.*, Worldpay). The acquirer is then left to recoup that chargeback from its merchant, which submitted the transaction for processing in the first instance, as provided in the merchant processing agreement between those parties.

PIRCH AND THE MERCHANT AGREEMENT

10. Pirch entered into the Bank Card Merchant Agreement/Application with Vantiv, LLC, predecessor to Worldpay, on or about November 9, 2015 (the "**Merchant Agreement**"). A true and correct copy of the Merchant Agreement, as subsequently amended and renewed, is attached hereto as **Exhibit A.**

11. Pursuant to the Merchant Agreement, Worldpay agreed to process Pirch's credit and debit card transactions (the "**Services**").

12. In exchange for Worldpay's provision of the Services, Pirch agreed to pay Worldpay processing fees and expenses, as well as to indemnify Worldpay against, *inter alia*,

4

chargebacks, card-brand liability assessments, and claims associated with Pirch's processing activity. (*See* Merchant Agreement, Sections 6, 13, & 21.)

13. Section 20 of the Merchant Agreement goes on to provide that, "[a]s a specifically bargained for inducement for [Worldpay] to enter into this Agreement with [Pirch], [Worldpay] at its option reserves the right to . . . establish from amounts payable to [Pirch] hereunder, and/or to cause [Pirch] to prepay to [Worldpay], a reserve of funds satisfactory to [Worldpay] to cover anticipated fees, chargebacks, returns and any other applicable assessments."

14. With respect to the resolution of chargeback requests by Pirch's customers, Pirch agreed that it "may instruct [Worldpay] in the defense of chargebacks…and [Pirch] agrees that it will promptly provide any such instructions to [Worldpay]. When [Worldpay] has determined it has all necessary information and instructions, [Pirch] hereby authorizes [Worldpay] to resolve chargebacks and respond to retrieval requests and other inquiries without further consulting [Pirch]." (*See* Merchant Agreement, Section 6.)

15. By virtue of an amendment, the Merchant Agreement was extended beyond its original term and was set to expire on September 1, 2026, and thereafter automatically renew for periods equal to one (1) year each. A true and correct copy of the Amendment is attached hereto as **Exhibit B**.

Pirch's Abrupt "Pause of Business"<br>and Exorbitant Chargebacks

16. On or about March 20, 2024, and without any advance notice to Worldpay, Pirch suddenly ceased all business activity, closed all of its retail stores, and issued a public statement indicating that it was temporarily implementing a "pause of business" in order to "give management the opportunity to complete a go-forward plan." Pirch has not processed any transactions with Worldpay since March 20, 2024.

E-FILED 04/09/2024 1:36 PM / CONFIRMATION 1455231 / A 2401595 / COMMON PLEAS DIVISION / IFI

17. Since its initial public statement, there have been no further updates or public announcements by Pirch, and numerous efforts by representatives of Worldpay to contact their counterparts at Pirch to obtain urgently-needed information, whether by phone, e-mail or otherwise, have been ignored. The only response Worldpay has received is an e-mail dated March 26, 2024 in which Pirch's Chief Financial Officer, Mekall Kaltenbach, said she had "nothing to communicate" and failed to address any of Worldpay's questions or expressed concerns. A true and correct copy of Ms. Kaltenbach's email is attached hereto as **Exhibit C.**

18. In the wake of Pirch's announcement, and likely motivated by the lack of explanation, updates, or any transparency provided by Pirch thereafter, its customers more or less immediately began disputing the charges on their cards and obtaining chargebacks from the issuers of those cards in exceptionally large numbers.

19. As of the filing of this Complaint, chargebacks amounting to $10,454,439.00 in the aggregate have been allowed on customer purchases with Pirch that were processed by Worldpay, which Worldpay has been forced to pay out-of-pocket because of Pirch's failure and/or refusal to cover its obligations under the Merchant Agreement.

20. Indeed, because Pirch has stopped processing new transactions (or, at least, stopped processing transactions with Worldpay), Worldpay has been unable to recoup the chargebacks from Pirch from an ongoing flow of card settlement proceeds.

21. Despite demands made upon Pirch, it has failed and refused to pay Worldpay for the unreimbursed chargebacks, or in fact to respond to or communicate with Worldpay in any substantive fashion. Thus, Worldpay has effectively been left "holding the bag" for well over $10 million in reversed charges initiated by Pirch's customers for which Pirch previously received the sales transaction proceeds.

6

22. To make matters worse, and because no one at Pirch has communicated with Worldpay, Worldpay has no idea whether Pirch intends or has the available inventory and capability to fulfill customer orders, or whether it even intends to respond to and oppose any of its customers' chargeback disputes.

23. In the meantime, Worldpay is accruing millions of dollars in losses, with the utter lack of cooperation or communication from Pirch only exacerbating the situation and preventing Worldpay from engaging in any efforts to mitigate further chargeback losses by responding to customer disputes on Pirch's behalf, or reverse the losses that it has incurred to date. These losses increase daily and are currently running at a rate of approximately $500,000.00 per day.

24. Accordingly, on March 28, 2024, Worldpay's counsel sent Pirch a letter demanding that the appropriate personnel immediately engage with Worldpay and provide urgently needed information concerning the status of Pirch's operations and its current going-forward plans so that Worldpay could respond to the chargeback requests on Pirch's behalf. For instance, if Pirch is able to fulfill a customer's order, or if the order has been (or is in the process of being) delivered, this information could potentially assist Worldpay with disputing a chargeback and, by extension, mitigate its losses caused by Pirch's closure.

25. To date, Pirch has failed and refused to respond to Worldpay's correspondence.

26. By letter dated March 14, 2024, Worldpay terminated the Merchant Agreement effective April 6, 2024. A true and correct copy of the letter is attached hereto as **Exhibit D**.

WORLDPAY FACES IRREPARABLE HARM

27. As a direct and proximate result of Pirch's conduct as described herein, Worldpay has suffered or will suffer a probable harm or injury to its business.

28. Pirch's actions have unjustifiably prohibited Worldpay from investigating and,

7

where appropriate, disputing the chargebacks initiated by Pirch's customers, which continue to accrue daily in the hundreds of thousands of dollars.

29. To be clear, Pirch—and only Pirch—possesses the inventory and delivery data that would allow Worldpay to determine whether customer orders have been—or are capable of being—fulfilled in the wake of Pirch's abrupt decision to shutter its doors. Without that information—to which it is contractually entitled—Worldpay has been left with its hands tied behind its back, and no ability to respond to Pirch's customers.

30. Worldpay's need to obtain delivery and order fulfillment data from Pirch is also exceptionally time sensitive. A merchant typically has 30 days (for Visa cards) or 45 days (for MasterCard cards) from submission of a chargeback dispute by a customer to respond and, where appropriate, submit information indicating that the requested chargeback should not be allowed. Yet Pirch ceased all operations nineteen (19) days ago (as of the date of this Complaint). Consequently, any responses to the earliest of the chargebacks filed by customers in the wake of Pirch's cessation of business will be time-barred within a matter of days from now, starting on April 19, 2024, with responses to additional batches of disputes becoming time-barred each day thereafter.

31. Meanwhile, Pirch appears to be careening towards an inevitable bankruptcy. Indeed, apart from its obligations to Worldpay, Pirch apparently owes millions of dollars to various other creditors, including a supplier who recently sued the retailer for over $4 million in unpaid inventory.

32. Unless Worldpay is granted injunctive relief so as to permit it to try to mitigate the damages caused by the sudden cessation of business by Pirch, the harm to its business will be irreparable, as its additional losses will be vastly in excess of any sums that it might ever recover

8

from an obviously insolvent merchant that is already facing collection actions by other significant creditors.

33. Moreover, the balance of equities weighs heavily in favor of granting Worldpay's request for injunctive relief. Worldpay is seeking basic inventory, order fulfillment and delivery information that Pirch presumably maintained in the ordinary course of its operations and could easily produce. On the other hand, if Pirch is not required to furnish such information, Worldpay faces *tens of millions* of dollars in potential chargeback exposure—all resulting from Pirch's decision to cease operations—without any ability to determine the validity of the customers' transaction disputes or attempt to mitigate its losses.

### COUNT I: BREACH OF MERCHANT AGREEMENT

34. Worldpay incorporates the preceding paragraphs of its pleading as if each was set forth fully herein.

35. The Merchant Agreement is a valid and binding contract, supported by lawful consideration.

36. Worldpay has performed all material obligations it undertook to perform under the Merchant Agreement, and all conditions precedent to the Merchant Agreement's enforcement, if any, have been satisfied by Worldpay.

37. Pursuant to the Merchant Agreement, Pirch agreed to reimburse and pay Worldpay for all chargebacks and refunds to customers, as well as handling and other fees associated with transactions submitted for processing by Pirch.

38. Notwithstanding that explicit agreement and undertaking, Pirch has failed and refused to reimburse Worldpay for $10,454,439.00 in accrued and unreimbursed chargebacks, thereby breaching the Merchant Agreement.

9

39. Pursuant to the Merchant Agreement, Pirch agreed timely to provide Worldpay with all necessary information and documentation required to oppose or otherwise resolve any chargeback requests by Pirch's customers.

40. Despite repeated requests, however, Pirch has failed and refused to provide Worldpay with any information concerning its available inventory, its prior fulfillment of customer orders, its ability to fulfill pending customer orders that have been charged back, its intention to respond to and/or oppose any of its customer's disputes, or the status of its operations and any going-forward plans.

41. Worldpay has been directly and proximately damaged by virtue of the foregoing breach(es) of the Merchant Agreement in an amount to be proven at trial, but in no event less than $10,454,439.00 as of the filing of this Complaint.

### COUNT II: ATTORNEYS' FEES

42. Worldpay incorporates the preceding paragraphs of its pleading as if each was set forth fully herein.

43. Pursuant to Section 25 of the Merchant Agreement, Pirch agreed to indemnify and hold harmless Worldpay for and from "all reasonable legal and accounting fees and all reasonable collection costs . . . resulting from or arising out of the Services[.]"

44. Due to the foregoing breaches of the Merchant Agreement by Pirch, and its baseless refusal to perform its obligations thereunder, Pirch has forced Worldpay to incur legal fees and collection costs arising out of the Services. Those costs, moreover, are continuing to accrue.

45. Thus, Worldpay is entitled to an award of reasonable attorneys' fees and collection costs from Pirch.

## COUNT III: INJUNCTIVE RELIEF

46. Worldpay incorporates the preceding paragraphs of its pleading as if each was set forth fully herein.

47. The Merchant Agreement is a valid and binding contract, supported by lawful consideration.

48. Worldpay has performed all material obligations it undertook to perform under the Merchant Agreement, and all conditions precedent to the Merchant Agreement's enforcement, if any, have been satisfied by Worldpay.

49. Pursuant to the Merchant Agreement, Pirch agreed timely to provide Worldpay with all necessary information and documentation necessary to oppose or otherwise resolve any chargeback requests by Pirch's customers.

50. Despite repeated requests, however, Pirch has failed and refused to provide Worldpay with any information concerning its available inventory, its prior fulfillment of customer orders, its ability to fulfill pending customer orders that have been charged back to date, its intention to respond to and/or oppose any of its customer's disputes, or the status of its operations and any going-forward plans.

51. As a direct and proximate result of Pirch's conduct as described herein, Worldpay has suffered and will continue to suffer a probable harm or injury to its business.

52. Indeed, unless the Court grants injunctive relief that would permit Worldpay to try to mitigate the damages caused by Pirch, the harm to its business will be irreparable, as its additional losses will be vastly in excess of any sums that it might ever recover from Pirch.

53. Worldpay therefore seeks a temporary, preliminary, and permanent injunction ordering Pirch immediately to furnish Worldpay with documents and information necessary to permit

11

Worldpay to assess and, where appropriate, oppose customer chargeback requests relating to transactions or orders placed with Pirch on or before March 20, 2024, including information relating to the status of Pirch's inventory and its ability or intention to fulfill and deliver the customer orders that are the subject of those chargeback requests.

54. The balance of equities clearly favors granting Worldpay's request for injunctive relief. Requiring Pirch to produce the requested information is an insignificant burden when compared to what Worldpay has to face—covering Pirch's chargeback liability, caused by Pirch's own misconduct, without any way to limit Worldpay's exposure.

### PRAYER FOR RELIEF

WHEREFORE, Worldpay respectfully demands and prays that the Court enter judgement in favor of Worldpay and against Pirch and award to Worldpay:

(a) Actual damages in an amount to be determined at trial;

(b) An emergency, preliminary, and permanent injunction ordering Pirch immediately to furnish Worldpay with documents and information necessary to permit Worldpay to assess and, where appropriate, oppose customer chargeback requests relating to transactions or orders placed with Pirch on or before March 20, 2024, including information relating to the status of Pirch's inventory and its ability or intention to fulfill and deliver the customer orders that are the subject of those chargeback requests;

(c) Attorneys' fees and court costs, as set forth above;

(d) Pre- and post-judgment interest at the maximum rate allowed by law; and

(e) Such other and further relief to which Worldpay may be entitled at law or in equity.

This 9th day of April, 2024.

        Respectfully submitted,

        /s/ Stephen A. Weigand
        Stephen A. Weigand (0083573)
        Jason W. Palmer (0088336)
        FARUKI PLL
        201 East Fifth Street, Suite 1420
        Cincinnati, OH 45202
        Telephone: (513) 632-0306
        Fax: (513) 632-0319
        Email: sweigand@ficlaw.com
               jpalmer@ficlaw.com

        Frank N. White*
        Georgia Bar No. 753377
        Morgan E. M. Harrison*
        Georgia Bar No. 470983
        Arnall Golden Gregory LLP
        171 17th Street NW, Suite 2100
        Atlanta, Georgia 30363
        Telephone: (404) 873-8536
        Email: frank.white@agg.com
                morgan.harrison@agg.com

        *Attorneys for Plaintiff Worldpay, LLC*

        * Motion to appear *pro hac vice* forthcoming

4888-5279-5573.1
4/9/2024

## VERIFICATION

STATE OF OHIO              )
                                     ) SS
COUNTY OF HAMILTON  )

I verify that I am personally aware of the facts, or the facts have been otherwise been made known to me, and that the factual allegations in the Verified Complaint for Damages and Emergency Injunctive Relief are true and correct to the best of my knowledge, information, and belief.



Steve Simon, Worldpay, LLC

Sworn to and subscribed in my presence by Steve Simon of Worldpay, LLC, this 9th day of April, 2024.



Notarial act performed by audio-visual communication

Notary Public

E-FILED 04/09/2024 1:36 PM / CONFIRMATION 1455231 / A 2401595 / COMMON PLEAS DIVISION / JFI